IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED MINE WORKERS OF AMERICA INTERNATIONAL UNION; UNITED MINE WORKERS OF AMERICA: DISTRICT 2; UNITED MINE WORKERS OF AMERICA LOCAL #1571; UNITED MINE WORKERS OF AMERICA LOCAL #4004, | : : : : : : | No.  4:CV 03-1948 |
| Plaintiffs | : : | Judge Jones |
| v. | : : | |
| LEHIGH COAL AND NAVIGATION COMPANY, | : : | |
| Defendants | : | |

**ORDER**

**February 23, 2006**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is the Plaintiffs' Motion in Limine ("the Motion")(doc. 80), filed on January 24, 2006.  In the Motion, Plaintiffs move this Court to preclude the Defendants from asserting a certain defense as set forth under Section 2102(c) of WARN Act.[1]

For the following reasons, the Motion (doc. 80) will be granted.

---

[1] The Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq.

**PROCEDURAL HISTORY**:

Plaintiffs commenced this action by filing a complaint (doc. 1) with this Court on October 31, 2003, alleging that Defendant violated the WARN Act by failing to give required notice to employees who were laid off from Defendant's coal mining facilities. Attempts at settlement were unsuccessful and thereafter the parties engaged in lengthy discovery in anticipation of trial.

On July 16, 2005, the parties filed a Consent Motion to Bifurcate for Dispositive Motions Purposes Liability and Damages (doc. 35), which we granted on July 18, 2005. (Rec. Doc. 36). On August 26, 2005, Defendants filed a Motion for Summary Judgment (doc. 38) which we denied by Order on November 8, 2005. (Rec. Doc. 76). On September 6, 2005, the Plaintiffs filed a Motion for Summary Judgment (doc. 57) which we denied by Order on October 21, 2005. (Rec. Doc. 73).

In anticipation of trial, Plaintiffs have filed the instant Motion (doc. 80). The Motion has been fully briefed by the parties and is therefore ripe for our review.

**FACTUAL BACKGROUND**:

Plaintiffs are various labor organizations within the meaning of §2(5) of the

National Labor Relations Act[2] representing mine workers, with principal places of business located throughout Pennsylvania. Defendant is a Pennsylvania corporation, engaged in the business of mining, processing and selling coal at its facilities in Schuykill County, Pennsylvania. Defendant's President is James J. Curran, Jr.

The Defendant's property consists of a 9,000 acre coal mine site in Tamaqua, Pennsylvania. At this location, Defendant engages in strip mining and coal processing. Defendant also maintains administrative offices in Pottsville, Pennsylvania. Between the two locations, the Defendant employed over 100 full-time employees.

Defendant owned a variety of heavy equipment to conduct its business, including four excavators necessary to the strip mining operation. The largest of these excavators was the 455 De Mag ("De Mag"). On September 4, 2000, all four excavators were not operational due to mechanical difficulties. After about one week subsequent to that date, three of the four excavators were repaired, however the Defendant continued to experience mechanical problems with the De Mag for several more weeks. Defendant alleges that at the time of the De Mag's mechanical failure, it did not know how long it would take for the De Mag to be repaired.

---

[2] 29 U.S.C. § 151 et seq.

Plaintiffs allege that the De Mag's mechanical failure was a major factor contributing to the layoffs that are at issue in this case. Plaintiffs allege that the De Mag's failure led to a significant loss in coal production, resulting in Defendant's lender, Congress Financial Corporation ("Congress") refusing to extend Defendant additional capital, thereby forcing Defendant to layoff employees. Defendant, however, counters that the mechanical failure of the De Mag was offset "to some degree" by a front-end loader used for excavation.[3] Defendant alleges that the failure of the De Mag was tempered by use of the front-end loader and as a result the De Mag's failure did not lead to a significant loss in production.

Defendant and Congress entered into a lending arrangement in 1998. On at least two occasions, Defendant defaulted on the financial covenants of the agreement. Plaintiff alleges that during 2000 and 2001, Congress refused to lend Defendant additional capital and when Defendant's requests were denied, Defendant unsuccessfully attempted to secure substitute financing. Defendant alleges that Congress made "numerous accommodations" to Defendant throughout their lending relationship, over and above what was required by the terms of the loan document.

---

[3] Defendant alleges that the front-end loader was capable of doing 1/3 of the work of the De Mag.

Between January 10, 2001 and January 22, 2001, Defendant laid off ninety-five employees. Thereafter, between January 15, 2001 and February 15, 2001, Defendant laid off sixty-two employees. Plaintiffs allege that no employees received notice of impending layoffs prior to January of 2001. In February of 2001, Defendant sent a letter to its salaried employees and a union representative, informing the employees that they had been laid off and that it was "the intention of the Company to resume all field operations as soon as is possible after the Company has concluded the refinancing of its existing debt . . . The lay off is not permanent, it is temporary." Thereafter, on March 14, 2001, Mr. Curran sent a letter to union representative Ed Yankovitch, informing him of the status of Defendant's refinancing negotiations. The letter is lengthy, however it is not specific as to the nature of the layoffs as permanent or temporary, nor does it reference a temporal time frame within which employees might expect to return to work.

**DISCUSSION**:

Pursuant to Section 2102(c) of the WARN Act:

A lay off more than 6 months which, at its outset, was announced to be a lay off of 6 months or less, shall be treated as an employment loss under this chapter unless –

> (1) the extension beyond 6 months is caused by business

> circumstances . . . not reasonably foreseeable at the time of the initial layoff; and
>
> (2) notice is given at the time it becomes reasonably foreseeable that the extension beyond 6 months will be required.

Plaintiff's essential argument is twofold: First, at the outset, Defendant did not give notice that the layoff was to be for six months or less and second, no notice was ever given when it became reasonably foreseeable that the layoff would extend beyond 6 months.

Indeed, the first written communication by Defendant to its employees' union representative concerning the layoff is dated February 9, 2001 (doc. 80, Ex. A), nearly a month after the first round of layoffs began.  The letter states that "field operations" have been ceased "temporarily."  Thereafter, in a letter to employees dated February 16, 2001 (doc. 80, Ex. B), Defendant states that "[t]he lay off [*sic*] is not permanent, it is temporary."  Plaintiffs argue that these letters cannot and do not satisfy either of WARN's notice requirements under Section 2102(c).  Plaintiffs posit that the letters cannot be considered notice given at the "outset" of the layoffs because they were written a month after the layoffs began, nor can the letters be considered appropriate  notice that the layoffs would extend beyond six months because the layoffs are characterized as "temporary."  Plaintiffs argue further that the letters are not effective WARN notices to employees because they do not

contain the detail required by the regulations promulgated under the WARN Act, namely 29 C.F.R. §639.7(c).

In essence, the Plaintiffs' Motion in Limine (doc. 80) gives us an opportunity to revisit a portion of our Order (doc. 73) denying their Motion for Summary Judgment. (Rec. Doc. 57). In that Order, we stated that a genuine issue of material fact remained over whether the Defendant announced, at the outset of the two mass layoffs, that they were to last six months or less. Upon reconsideration of the evidence in the record, namely the referenced February and March letters, it appears clear to the Court that the Defendant cannot avail itself of the protection of Section 2102(c) because it did not announce that the layoffs were intended to last six months or less at the outset of the layoff periods. In fact, Defendant did not give any notice at the outset of the layoff periods, but rather waited over a month before issuing a letter to a union representative, amorphously categorizing the layoffs as "temporary." It seems apparent to us that the language of the statute is clear; in order to seek the protection of Section 2102(c), an employer must announce specifically, at the outset of the layoff period, that the layoff is to last "6 months or less." Defendant would have us infer from Mr. Curran's letters that they constituted after the fact six month layoff notices, however Defendant did not make the requisite announcement when the layoffs began, therefore it cannot avail

itself of the protection of Section 2102(c). Moreover and in any event, the letters are not time specific as to the expected duration of the layoffs.

Even assuming, arguendo, that the February 16, 2001 letter complied with the threshold requirement of Section 2102(c) and that Defendant's failure to obtain refinancing was not "reasonably foreseeable" at the time of the initial layoffs, Defendant's March 14, 2001 letter (doc. 82, Ex. A) cannot be construed as effective notice pursuant to Section 2102(c)(2) that the layoffs would extend beyond six months. Pursuant to 29 C.F.R. §639.7(c), an appropriate WARN Act notice must contain a litany of particularized statements, including the name and address of the employment site where the layoffs will occur, contact information of the company, a statement as to whether the planned action is expected to be permanent or temporary, the expected date of the layoff, and the job titles of positions to be affected and the names of the workers currently holding affected jobs. Although the March 14, 2001 letter is lengthy, neither it nor the referenced February 16, 2001 letter from Mr. Curran meet any of the express requirements of 29 C.F.R. §639.7, and therefore cannot be considered effective notices for any purpose under the WARN Act.

For the foregoing reasons, it is clear to the Court that the Defendant cannot seek the protection of Section 2102(c) of the WARN Act, therefore we will grant

the Plaintiff's Motion (doc. 80).

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion (doc. 80) is GRANTED.

2. The Defendant is PRECLUDED from asserting a defense under Section 2102(c) of the WARN Act at trial.

s/ John E. Jones III
John E. Jones III
United States District Judge
