IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED MINE WORKERS OF AMERICA INTERNATIONAL UNION; UNITED MINE WORKERS OF AMERICA: DISTRICT 2; UNITED MINE WORKERS OF AMERICA LOCAL #1571; UNITED MINE WORKERS OF AMERICA LOCAL #4004, | : : : : : : : | No. 4:CV 03-1948 |
| Plaintiffs | : : | Judge Jones |
| v. | : : | |
| LEHIGH COAL AND NAVIGATION COMPANY, | : : | |
| Defendants | : | |

**MEMORANDUM AND ORDER**

**September 12, 2006**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is the Plaintiffs' Second Motion in Limine ("the Motion")(doc. 101), filed on April 27, 2006. In the Motion, Plaintiffs move this Court to preclude the Defendants from asserting the "faltering company" defense set forth under Section 2102(b)(1) of WARN Act.[1]

For the following reasons, the Motion (doc. 101) will be granted.

**PROCEDURAL HISTORY**:

---

[1] The Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq.

1

Plaintiffs commenced this action by filing a complaint (doc. 1) with this Court on October 31, 2003, alleging that Defendant violated the WARN Act by failing to give required notice to employees who were laid off from Defendant's coal mining facilities. Attempts at settlement were unsuccessful and thereafter the parties engaged in lengthy discovery in anticipation of trial.

On July 16, 2005, the parties filed a Consent Motion to Bifurcate for Dispositive Motions Purposes Liability and Damages (doc. 35), which we granted on July 18, 2005. (Rec. Doc. 36). On August 26, 2005, Defendants filed a Motion for Summary Judgment (doc. 38) which we denied by Order on November 8, 2005. (Rec. Doc. 76). On September 6, 2005, the Plaintiffs filed a Motion for Summary Judgment (doc. 57) which we denied by Order on October 21, 2005. (Rec. Doc. 73).

In anticipation of trial, Plaintiffs filed a first Motion in Limine (doc. 80), seeking to have this Court preclude the Defendant's from asserting a defense under Section 2102(c) of the WARN Act at trial. By Order dated February 23, 2006 (doc. 84), we granted the Plaintiffs' first Motion in Limine.

The instant Motion was filed on April 27, 2006. The Motion has been fully briefed by the parties and is therefore ripe for our review.

**FACTUAL BACKGROUND**:

Plaintiffs are various labor organizations within the meaning of §2(5) of the National Labor Relations Act[2] representing mine workers, with principal places of business located throughout Pennsylvania.  Defendant is a Pennsylvania corporation, engaged in the business of mining, processing and selling coal at its facilities in Schuykill County, Pennsylvania. Defendant's President is James J. Curran, Jr.

The Defendant's property consists of a 9,000 acre coal mine site in Tamaqua, Pennsylvania.  At this location, Defendant engages in strip mining and coal processing.  Defendant also maintains administrative offices in Pottsville, Pennsylvania.  Between the two locations, the Defendant employed over 100 full-time employees.

Defendant owned a variety of heavy equipment to conduct its business, including four excavators necessary to the strip mining operation.  The largest of these excavators was the 455 De Mag ("De Mag").  On September 4, 2000, all four excavators were not operational due to mechanical difficulties.  After about one week subsequent to that date, three of the four excavators were repaired, however the Defendant continued to experience mechanical problems with the De Mag for several more weeks.  Defendant alleges that at the time of the De Mag's

---

[2] 29 U.S.C. § 151 et seq.

mechanical failure, it did not know how long it would take for the De Mag to be repaired.

Plaintiffs allege that the De Mag's mechanical failure was a major factor contributing to the layoffs that are at issue in this case. Plaintiffs allege that the De Mag's failure led to a significant loss in coal production, resulting in Defendant's lender, Congress Financial Corporation ("Congress") refusing to extend Defendant additional capital, thereby forcing Defendant to layoff employees. Defendant, however, counters that the mechanical failure of the De Mag was offset "to some degree" by a front-end loader used for excavation.[3] Defendant alleges that the failure of the De Mag was tempered by use of the front-end loader and as a result the De Mag's failure did not lead to a significant loss in production.

Defendant and Congress entered into a lending arrangement in 1998. On at least two occasions, Defendant defaulted on the financial covenants of the agreement. Plaintiff alleges that during 2000 and 2001, Congress refused to lend Defendant additional capital and when Defendant's requests were denied, Defendant unsuccessfully attempted to secure substitute financing. Defendant alleges that Congress made "numerous accommodations" to Defendant throughout

---

[3] Defendant alleges that the front-end loader was capable of doing 1/3 of the work of the De Mag.

their lending relationship, over and above what was required by the terms of the loan document.

Between January 10, 2001 and January 22, 2001, Defendant laid off ninety-five employees. Thereafter, between January 15, 2001 and February 15, 2001, Defendant laid off sixty-two employees. Plaintiffs allege that no employees received notice of impending layoffs prior to January of 2001. In February of 2001, Defendant sent a letter to its salaried employees and a union representative, informing the employees that they had been laid off and that it was "the intention of the Company to resume all field operations as soon as is possible after the Company has concluded the refinancing of its existing debt . . . The lay off is not permanent, it is temporary." Thereafter, on March 14, 2001, Mr. Curran sent a letter to union representative Ed Yankovitch, informing him of the status of Defendant's refinancing negotiations. The letter is lengthy, however it is not specific as to the nature of the layoffs as permanent or temporary, nor does it reference a temporal time frame within which employees might expect to return to work.

**DISCUSSION**:

Plaintiffs' essential argument is twofold: There is neither a factual nor legal basis for LCN's maintenance of the 'faltering company' defense, and accordingly

this Court should grant the instant Motion in Limine.

Pursuant to Section 2102(b)(1) of the WARN Act:

An employer may order the shutdown of a single site of employment before the conclusion of the 60-day period if as of the time that notice would have been required the employer was actively seeking capital or business which, if obtained, would have enabled the employer to avoid or postpone the shutdown and the employer reasonably and in good faith believed that giving the notice required would have precluded the employer from obtaining the needed capital or business.

Indeed, the first written communication by Defendant to its employees' union representative concerning the layoff is dated February 9, 2001 (doc. 80, Ex. A), nearly a month *after* the first round of layoffs began. The letter states that "field operations" have been ceased "temporarily." Thereafter, in a letter to employees dated February 16, 2001 (doc. 80, Ex. B), Defendant states that "[t]he lay off [*sic*] is not permanent, it is temporary." Plaintiffs argue that these letters cannot and do not satisfy either of WARN's notice requirements under Section 2102(b)(1), specifically because the 'faltering company' exception requires *some* prior notice pursuant to 20 C.F.R. § 639.9, albeit *reduced* notice.

When Section 2102(b)(1) and 20 C.F.R. § 639.9 are read together, it is clear that in order to seek the protection of Section 2102(b)(1) an employer must give *reduced* notice *prior* to the shutdown. After-the-fact notice does not cure the failure to give notice prior to the shutdown. Furthermore, the Defendant has not

presented *any* evidence that prior, reduced notice was given to the employees. As argued by the Plaintiffs, the facts in this matter do not and cannot support the legal defense embodied in Section 2102(b)(1).

For the foregoing reasons, it is clear to the Court that the Defendant cannot seek the protection of Section 2102(b)(1) of the WARN Act. Accordingly, we shall grant the Plaintiffs' Motion and preclude the Defendant from using the 'faltering business' defense at trial.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Plaintiffs' Second Motion in Limine (doc. 101) is GRANTED.

2. The Defendant is PRECLUDED from asserting a defense under Section 2102(b)(1) of the WARN Act at trial.

s/ John E. Jones III
John E. Jones III
United States District Judge